IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MARINDA THOMAS                                                        PLAINTIFF

v.                                                CIVIL ACTION # 1:05cv707-KS-MTP

HENRY J. "JOEY" PREVOU; HANCOCK
COUNTY; and STEVE GARBER, individually
and in his official capacity as Sheriff of Hanock County          DEFENDANTS


# MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motions to dismiss and/or summary judgment by
Defendant Steve Garber [# 121] and [# 122] and the motions to dismiss and/or summary
judgment by Hancock County [#124] and [# 125].  Because the Plaintiff has failed to establish
that Sheriff Garber implemented unconstitutional policies that causally resulted in injuries to the
Plaintiff, he is entitled to qualified immunity from suit in his individual capacity, and the motion
to dismiss should be **granted**.  Because the Plaintiff failed to create a genuine issue of material
fact that Hancock County established a custom or policy of inadequate training or supervision
that displayed deliberate indifference to the rights of the Plaintiff, the motion for summary
judgment by Hancock County should be **granted in part**.  But because there exists genuine
issues of material fact as to whether Officer Prevou recklessly disregarded the rights of the
Plaintiff, who might have been engaged in criminal activity at the time, the motion for summary
judgment by Hancock County should be **denied in part**.

After the above motions were briefed, counsel for Marinda Thomas filed a motion to for
leave to file supplemental briefing [# 135].  Without receiving permission of the Court, counsel

then filed additional briefing [# 138].  Counsel for the Defendant filed two separate motions to strike [# 137] and # [141] objecting to the supplemental briefing, then filed their own memorandum in opposition [# 140] adding additional briefing to the record.  Because the additional briefing was filed out of time and without leave of court, and because the Court can dispense with the motions for dismissal and summary judgment without it, the motion to file supplemental briefing [# 135] is **denied** and the motions to strike [# 137] and[# 141] are **denied as moot**.


## I. FACTUAL BACKGROUND

Marinda Thomas entered the Hancock County Jail on the night of June 5, 2005, to report a crime.  Instead she became an inmate.  Hancock County Jail Night Supervisor Henry J. Prevou arrested Thomas and detained her until the following day.  She left the jail with bruises and lacerations on her face, among other injuries.  Exactly what caused her arrest and why she was injured remains in dispute.

Thomas claims that she entered the jail to file a report against Glenda Davis, a woman with whom she had a dispute earlier that evening.  Both Davis and Thomas entered the jail at approximately the same time, and both sought to speak with booking officers.  While Davis retreated to the vending machines when she saw the main desk unoccupied, Thomas began pounding on the glass attempting to get the attention of jailers.  Thomas attracted the attention of Prevou, and began boisterously explaining why Davis should be arrested.

According to Thomas, instead of taking down her statement, Officer Prevou arrested Thomas, tackling her to the floor and dragging her to a cell.  While incarcerated, Thomas alleges

that Officer Prevou punched, kicked, and slapped her, causing severe knee injuries, lacerations to her face, and a separated shoulder. Thomas claims she was denied medical treatment while incarcerated, and was forced to seek emergency treatment when released. Hancock County later declined to pursue any charges against Thomas for the incident.

Officer Prevou disputes that his use of force was either excessive or unjustified. He claims Thomas entered the facility and belligerently demanded that another woman be arrested. After attempting to speak to both parties, Officer Prevou claims that Thomas continued "yelling, screaming, cussing" in violently demanding an arrest be made. After repeated warnings, Officer Prevou decided to arrest Thomas, at which point she tried to strike him with her fist. Officer Prevou claims that "inertia" then brought Thomas to the floor, after which he carried her toward a cell as she went limp to frustrate Officer Prevou. With Thomas kicking and resisting the entire time, Officer Prevou says that he was finally able to place restraints on Thomas after his leg irons malfunctioned. Thomas was held at the jail until she made bail the following day.

Thomas subsequently brought suit against Officer Prevou, Hancock County Sheriff Steve Garber, and Hancock County itself. Her complaint alleges that Hancock County "adopted a government policy of deliberate indifference to the welfare of female prisoners" and failed to "provide adequate policies and procedures" to prevent abuse toward inmates. Pl.'s Compl. ¶ 11 (Dec. 27, 2005). She alleges that the combined actions of the Defendants resulted in a violation of rights actionable under 42 U.S.C. § 1983 and Miss. Code Ann. § 11-46-11.

Both Hancock County and Sheriff Garber have since moved to dismiss, or in the alternative, grant summary judgment. Because the Defendants have moved for summary judgment, the Court will first lay out the summary judgment standard. Next, the Court will

address the § 1983 claims against Hancock County and Sheriff Garber in his individual capacity.[1]

Finally, the Court will address the MTCA state law claims against Hancock County.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004).

If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on her pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007). The movant carries the burden of

---

[1]Because a claim against Sheriff Garber in his official capacity is really just a claim against the municipality itself, the consideration of the § 1983 claim against Hancock County also disposes of the same claim against Sheriff Garber in his official capacity. *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000).

establishing the absence of any genuine issue of material fact. *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).


### III. § 1983 CLAIMS AGAINST HANCOCK COUNTY & SHERIFF GARBER IN HIS OFFICIAL CAPACITY

Municipalities are not responsible for the constitutional violations of their employees based on respondeat superior. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). In other words, Hancock County cannot be held liable "solely because it employs a tortfeasor." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). To be held liable, the "municipality itself" must cause the violation at issue. *City of Canton,* 489 U.S. at 385. Finding municipal liability "under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Proof of an official policy or custom can be shown in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority. *See Monell v. City of New York Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *Snow v. City of El Paso, Texas*, 501 F. Supp. 2d 826, 831 (W.D. Tex. 2006).

Thomas does not allege that Hancock County adopted any formal policy that caused her injuries. Nor has she alleged that a single act by any policymaking official damaged her. She claims that informal customs and practices as well as a failure to train and supervise resulted in

5

her experience at the jail.  The Court will examine both of these theories against Hancock County under the summary judgment standard.

### 1. Was there an informal custom?

Thomas has failed to establish that Hancock County adopted an informal custom or policy of excessive force against female inmates sufficient to impose liability.  The evidence of excessive force is too thin to show the existence of the informal custom, and there is no indication that Hancock County had the requisite knowledge that any such informal practice existed.

A municipality can establish an informal custom or policy "even though such custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690-91.  An isolated incident is insufficient to establish a custom. *Pineda v. City of Houston,* 291 F.3d 325, 329 (5th Cir. 2002). To show that an informal custom exists, a plaintiff must demonstrate that "the relevant practice is so widespread as to have the force of law." *Bd. of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997).   Holding the municipality liable for that informal custom requires the plaintiff to prove policymakers had "actual or constructive knowledge" of the informal custom. *Pineda*, 291 F.3d at 330-31.  Their knowledge must also reflect a "deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579.

The record is insufficient to show that Hancock County had the informal custom or polices alleged by the Plaintiff.  In her complaint, she alleges a litany of different abuses are

customary, but only two pertain to the injury suffered by Thomas–the use of excessive force and improper arrests by jailers. The evidence offered to support an informal custom comes principally from the deposition of Eugenia Lauga, a former employee of the Hancock County Jail. Lauga stated that while working at the jail, she had seen "a lot of mistreatment" including people "kicked in the face, in the back" and "just plenty of abuse by shift sergeants mainly." Pl.'s Ex. F at 3 (Mar. 9, 2007). Outside of Lauga's testimony, the deposition of former inmate Theresa Garcia also offers some evidence of a custom. Garcia stated that she "heard [another inmate] getting beat up" while Garcia was incarcerated at the jail. Pl.'s Ex. E at 3 (Mar. 9, 2007). Garcia also stated that when her husband was incarcerated at the jail "they beat the piss out of him." *Id.* at 6. There is no evidence offered to establish an informal custom of improper arrests or detentions by jailers.

Even if such thin evidence established an informal custom of excessive force, there is nothing to suggest that policy-making officials of Hancock County had sufficient knowledge of the informal policy to impart liability. Although Lauga claims that she made written complaints to supervisory officials, none of these documents have made it into the summary judgment record. Her vague statements combined with the complaints of a former inmate cannot be said to create a genuine fact issue as to the actual knowledge of Hancock County that informal custom was in force. And in order for a municipality to be held to have constructive knowledge of an informal custom, "the violations [must be] so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Escobar v. City of Houston*, 2007 WL 2900581 (S.D. Tex. Sep. 29, 2007) (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). No such showing has been made, and hence no genuine fact

issue about an informal custom exists.

## 2. Was there a failure to train or supervise?

Thomas also has failed to establish liability that Hancock County, as a municipality, adopted a custom or policy of inadequate training or supervision of corrections officers.  To prevail on a failure to train or supervise claim against a municipality, a plaintiff must show "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).  To establish deliberate indifference in a failure to train or supervise case, "proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights" is normally required. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).  Generally a litigant "must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal citations omitted).[2] Without this pattern, "an expert's opinion is generally not enough to establish deliberate indifference." *Thompson*, 245 F.3d at 459.

### A.  Failure to Train

Applying the first prong of the analysis, the Plaintiff has failed to establish a failure to

---

[2]*See also Lewis v. Pugh*, 2007 WL 1394145 at *4 (E.D. Tex. May 11, 2007) ("the Plaintiff must demonstrate a pattern of constitutional violations, and must also demonstrate that, in the face of this pattern, the inadequacy of the Defendants' training and supervision is 'obvious' and 'obviously likely' to result in a constitutional violation.").

train or supervise sufficient to survive summary judgment.  Simply arguing that additional training would have prevented an injury is insufficient. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).  Defendant Proveau is permitted by statute to work at the jail for two years prior to becoming certified, a time limit which had not yet expired.[3]  Moreover, deposition testimony established that new hires rotated through various jail duties, accumulating approximately 40 hours of on-the-job training.

Because even non-certified employees received some training, the Plaintiff cannot rely on a complete failure to train theory.  Instead, the Plaintiff must "allege with specificity how a particular training program is defective." *See Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).  Yet the Plaintiff has not alleged exactly how the Hancock County training was defective, other than to allege that absolutely no training took place.[4] Without alleging how the Hancock County training programs were defective, the Plaintiff has not established a failure to train on the part of Hancock County.

Finally, any allegations of insufficient training must be focused on "the adequacy of the training program in relation to the tasks the particular officers must perform. *Snyder*, 142 F.3d at 798.  The Plaintiff has offered no evidence that Officer Prevou was expected to make arrests in his capacity as the Night Supervisor at the jail.  Therefore, inadequacies in training him to make such arrests cannot form the basis of a failure to train claim against Hancock County.

---

[3]*See* Miss. Code Ann. § 45-4-9.

[4]The Plaintiff's Complaint is focused on the alleged abuse suffered by female prisoners in the Hancock County facility.  Although it alleges that the defendants "failed to establish adequate procedures and policies for hiring, training, supervising, and disciplining" corrections officers, the Complaint does nothing to describe exactly what procedures would have been adequate.  The Plaintiff's motion responses add no new theories of inadequacy.

B.  Causation

Assuming the Plaintiff has established a failure to train, the fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Applying the second prong of municipal liability, the plaintiff must "prove the existence of a direct causal link between the inadequate training and the plaintiff's constitutional deprivation." *Duke v. Cartlidge*, 2006 WL 2788541 (S.D. Miss. Sep. 26, 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-86 (1989)).

As discussed above, the allegations of deficient training are not specific as to the precise shortcomings in the Hancock County procedures.  Moreover, these allegations are not focused on the precise tasks that Officer Prevou would be expected to perform as a Night Supervisor.  This lack of clarity hampers the Plaintiff's ability to establish a direct causal link between the failure and the injury.  Most importantly, there is no evidence in the record that Hancock County's failure to train was the moving force behind the alleged violations by Officer Prevou, such as testimony that Prevou used excessive force against Thomas "because he was unsupervised." *See Kibble v. Thomas*, 2007 WL 1725473 (S.D. Tex. Jun. 12, 2007).  As such, the Plaintiff has not proven a direct causal link between her injuries and the alleged deficiencies in the Hancock County training programs sufficient to survive summary judgment.

C.  Deliberate Indifference

Assuming the Plaintiff had established a failure to train that caused her injuries, the

evidence is legally insufficient to support a finding of deliberate indifference against Hancock County. The evidence of a pattern of wrongful detentions or excessive use of force outside by Officer Prevou are hopelessly vague. The principal evidence indicating a pattern of violations comes from former employee Lauga's deposition, where she states that she had seen "a lot of mistreatment" including people "kicked in the face, in the back" and "just plenty of abuse by shift sergeants mainly." Pl.'s Ex. F at 3 (Mar. 9, 2007). Outside of Lauga's testimony, the deposition of former inmate Garcia stated that she "heard" other inmates "getting beat up" and that jailers "beat the piss out of" her husband. Pl.'s Ex. E at 3 (Mar. 9, 2007).

Assuming each of these statements were true, they fail to rise to the level of a pattern of abuse to which Hancock County could have been deliberately indifferent. First, it is unclear whether the use of force in any of the above situations was excessive to the extent complained by Lauga or Garcia. The situations recounted by Lauga and Garcia are stripped clean of details that are determinative as to whether the amount of force used was excessive. This lack of description makes them less valuable as evidence of a pattern, as such evidence probative to a pattern cannot suffer "an excessively high level of generality." *Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir. 2005). And without anything to substantiate them, the allegations do not establish a pattern of activity of which supervisors could have been deliberately indifferent. The Fifth Circuit has noted that "it would be perverse to require that courts exclude allegations of past wrongdoing in order to protect the rights of defendants, while at the same time demanding that police officials give credence to unsubstantiated complaints against individual police officers." *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 384 n.45 (5th Cir.

2005).[5]

Second, there is no indication that Hancock County knew of any pattern of the excessive use of force or improper arrests by corrections officers. Were Lauga or Garcia to submit written versions of their deposition statements, it would be unclear to any supervisory official whether the force used was truly excessive or was warranted by the scenario. Lauga's claimed shortage of training on the use of force make her conclusions unreliable as to when force has been used excessively, and the lack of detail in her statements would not permit supervisors to draw conclusions that it had. Hence, they would not be aware that a pattern of excessive force was developing, and could not have been deliberately indifferent to such a pattern.[6]

Finally, there is no real record of excessive force or improper arrests for Officer Prevou himself. As the Fifth Circuit has instructed, "a plaintiff seeking recovery under a failure to train or supervise rationale must prove that the police chief failed to control an officer's 'known propensity for the improper use of force.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (quoting *Sims v. Adams*, 537 F.2d 829, 832 (5th Cir. 1976)). Despite the vague allegations in the record, nothing indicates that Hancock County had any warnings or concerns specific to the risk that Defendant Prevou would either use excessive force or make an improper

---

[5]Allowing such shallow allegations to stand-in for a demonstrable pattern of abuse would essentially "collapse supervisory liability into 'functionally the *respondeat superior* regime the Supreme Court has repeatedly rejected.'" *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 384 (5th Cir. 2005) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002).

[6]The Plaintiff might attempt to rebut this by claiming that supervisory officials had constructive knowledge of violations. But in order for a municipality to be held to have constructive knowledge of , "the violations [must be] so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Escobar v. City of Houston*, 2007 WL 2900581 (S.D. Tex. Sep. 29, 2007) (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).

arrest.[7]  Therefore, their failure to better supervise or train Defendant Prevou cannot be said to result from a deliberate indifference of the known risk that he might use excessive force or make a wrongful arrest.

The Fifth Circuit offered a helpful analogy of when an officer's conduct has created a pattern of abuse toward which supervisory officials could be deliberately indifferent.  Analyzing the sister circuit case of *Camilo-Robles v. Hoyos*, the Fifth Circuit noted that the officer in question had "a career that would make St. Sebastian weep," including "numerous disciplinary and/or threatening infractions involving violent and/or threatening behavior-we count at least eighteen-many of which entailed unwarranted brandishing of his weapon." *Estate of Davis ex. rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 385 n.51 (5th Cir. 2005).  The Fifth Circuit noted that "qualified immunity was properly denied to police supervisors who had rearmed and helped put this officer back to work, at which point another incident predictably occurred."  *Id*.

### 3. Single Incident Exception

Finally, Thomas cannot premise liability against Hancock County based on the Fifth Circuit's narrowly tailored "single incident" exception.  This allows "in certain extreme circumstances, a single act by a municipal employee to form the basis of municipal liability apart from a pattern of unconstitutional activity." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).  To prevail under that theory, the plaintiff must show that the "highly predictable"

---

[7]*See Reed v. City of Garland, Tex*., 2007 WL 2948368 at *6 (N.D. Tex. Oct. 9, 2007) ("Plaintiff has not set forth facts showing that prior to the incident at issue here, [either officer] had a 'known propensity for the improper use of force,' and that [the police chief] was aware of such a propensity and deliberately disregarded it, thus acting to cause Plaintiff's injuries.")

consequence of the failure to train or supervise resulted in the exact injury suffered by the plaintiff, and that this failure to train or supervise "was 'the moving force' that had a specific causal connection to the constitutional injury. *Brown v. Bryan County, OK*, 219 F.3d 450, 461 (5th Cir. 2000) [8]

The plaintiff who prevailed in the *Brown* case had proven that the culpable sheriff had hired a relative to serve as his deputy.  Before hiring, the new deputy had multiple prior arrests and convictions for violent crimes, and even had an arrest warrant still outstanding. *Id*. at 454-55. The deputy was not trained by the sheriff in any way. *Id*.  Just after joining the force, he had already established a reputation for an excessive number of "take down" arrests. *Id*. The appeals court applied the single incident exception to find municipal liability after the deputy violently assaulted an unarmed civilian causing her significant physical injuries. *Id.* at 454.

Officer Prevou has no record of prior conduct remotely comparable to that of the offending deputy in *Brown*.  There is neither a notable criminal history associated with Officer Prevou nor an established reputation for the use of excessive force.  Moreover, the evidence from both parties has established that officers received some level of training, even before achieving any certification.  Allowing the meager showing of this Plaintiff to satisfy the single incident exception would risk swallowing the rule whole, and establishing de facto *respondeat superior* liability.

---

[8]The Fifth Circuit dubbed this standard "unmistakable culpability and clearly connected causation." *Brown v. Bryan County, OK*, 219 F.3d 450, 461 (5th Cir. 2000).

**IV. § 1983 CLAIMS AGAINST SHERIFF GARBER IN HIS INDIVIDUAL CAPACITY**

The doctrine of qualified immunity shields Sheriff Garber from suit in his individual capacity if particular conditions are met. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). When the defendant to a 42 U.S.C. § 1983 claim invokes qualified immunity as an affirmative defense, the burden is on the plaintiff to establish that the defendant is not protected because the official's allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005). To prevail, the plaintiff must show "genuine issues of material fact [exist] concerning the reasonableness" of the defendant's conduct. *Bazan ex rel Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

The qualified immunity analysis is a two-step inquiry. The bifurcated legal standard is used "both to promote clearer standards for official conduct and to spare defendants unwarranted liability and court costs." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). To avoid the disruption of government occasioned by a lawsuit, the qualified immunity analysis should be applied "as soon as possible in a judicial proceeding, even before discovery." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). First, the court examines whether the plaintiff has alleged the "violation of a clearly established right." *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995). To be deemed clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kinney v. Weaver*, 367 F.3d 337, 352 (5th Cir. 2004).

Second, the court asks whether the defendant's conduct was "objectively reasonable in light of 'clearly established' law at the time of the violation." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Even when the government official violated a clearly

established right, the official "is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  The objective reasonableness of official action is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).   Since qualified immunity turns upon objective factors, "a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).  To carry the burden, a plaintiff must show that "all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded." *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999).  The qualified immunity defense "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Under § 1983, a court cannot hold supervisory officials vicariously liable for the actions of their subordinates. *Oliver v. Scott*, 276 F.3d 736, 743 (5th Cir. 2002).  Accordingly, a court will hold supervisory officials liable only if "(i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996).  In addition, a plaintiff must show that the supervisory official acted with deliberate indifference, "which requires proof that the supervisor 'disregarded a known or obvious consequence of his action.' " *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). The standard of deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).  Acts or decisions that are "merely inept, erroneous, ineffective, or negligent do not

16

divest officials of qualified immunity." *Alton v. Texas A&M Univ*., 168 F.3d 196, 201 (5th Cir. 1996).

It is uncontested that Sheriff Garber was not involved in either the arrest or incarceration of Thomas.  Because Sheriff Garber was not present at the facility, he did not violate any clearly established rights of the plaintiff in the detention and use of force against the Plaintiff. Therefore, the only way that Sheriff Garber can be denied immunity is through the implementation of an unconstitutional policy that caused the Plaintiff's injury.  The Plaintiff's burden, then, is to demonstrate that Sheriff Garber acted with deliberate indifference in implementing unconstitutional policies that caused her injuries.

As discussed in context with the claims against Hancock County, the claims of a failure to train that resulted from deliberate indifference by policymakers are insufficient to survive summary judgment.  There is no evidence unique to Sheriff Garber that has not been discussed in context with Hancock County.  Therefore, Sheriff Garber is entitled to qualified immunity from suit in his individual capacity.

## V. STATE LAW CLAIMS AGAINST HANCOCK COUNTY

The Mississippi Tort Claims Act waives the state's sovereign immunity for certain tort claims. *See* Miss. Code Ann. § 11-46-5 (1972).  But within this broader waiver are several exceptions where the state retains its sovereign immunity.  The Mississippi Code preserves immunity for "a governmental entity and its employees acting within the course and scope of their employment" from a claim "arising out of any act or omission of an employee of a

17

governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection." Miss. Code Ann. § 11-46-9 (1972). This provision protects corrections officers "unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." *Id.*   Under Mississippi law, the term "reckless disregard" is "synonymous" with the terms "willful and wanton," which require the actor "knowingly and intentionally doing a thing or wrongful act." *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999).  The Mississippi Supreme Court has characterized "wantonness" as "failure or refusal to exercise any care," while mere negligence is the "failure to exercise due care." *Beta Beta Chapter v. May*, 611 So. 2d 889, 895 (Miss. 1992).  A municipality will remain immune under the MTCA "unless it is proved by a preponderance of the evidence that the employee acted in reckless disregard of the safety and well-being of any person (claimant) not engaged in criminal activity at the time of injury." *Simpson v. City of Pickens*, 761 So. 2d 855, 859 (Miss. 2000).

Turning to the instant case, a genuine issue of fact exists as to whether Officer Prevou acted with reckless disregard for the safety and well-being of Thomas.  Unlike reported cases of officer negligence that leads to an injury, Officer Prevou purposefully brought Thomas to the ground to arrest her.  Although he claims it was necessary to subdue Thomas for arrest, his physical encounter with her was an intentional act.  And based upon the conflicting evidence in the record, a jury could find that Officer Prevou's actions toward Thomas amounted to a "reckless disregard" for her safety and well-being sufficient to waive sovereign immunity.

But even if Defendant Prevou acted with reckless disregard for the Plaintiff's well-being, the state would retain sovereign immunity if Thomas was "engaged in criminal activity at the

18

time of injury."  The MTCA is drafted to ensure that "[i]f the victim is engaged in an illegal

activity that is a cause of the harm, the government is immune from liability." *Miss. Dept. of*

*Public Safety v. Durn*, 861 So. 2d 990, 997 (Miss. 2003).  There is no doubt that if Thomas was

as belligerent as alleged, there exists "a clear nexus between the criminal activity and the injury

suffered" by Thomas. *Durn*, 861 So. 2d at 997.  Yet the determination of Thomas's criminal

activity turns on the highly contested circumstances of her encounter with Officer Prevou.

Moreover, the Court's analysis is unaided by the finding or evidence of any state criminal

procedures, as all charges against Thomas were dropped after the incident.

Although the Defendants are correct that a lack of any formal charges against the

claimant does not bar a finding of criminal activity necessary to preserve the state's sovereign

immunity, it does not follow that allegations of criminal activity alone will suffice.[9]  In the

*McCoy* case cited by the Defendant, the claimants had fled police in stolen vehicle and died after

crashing the car during the ensuing high speed chase. *McCoy v. City of Florence*, 2006 WL

1984735 (Miss. App. 2006).  Although the appeals court in *McCoy* reiterated that "the MTCA

does not require an actual finding of guilt," the record before them had established through

affidavits that the claimants knew their car was stolen when they purposefully and illegally

evaded police. *Id.* at *13.  Even though formal charges were never brought against the offenders,

the appeals court found the evidence sufficient to bar a suit against the city.

The instant case has a much thinner record than was available in *McCoy* to support the

---

[9]When an officer fired his service weapon and killed a participant in a bar fight, the court in this district
found the officer immune because the victim was engaged in an "ongoing misdemeanor" at the time. *See Duke v.
Cartlidge*, 2006 WL 2788541 at *7 (S.D. Miss. Sep. 26, 2006) ("Deputy Ducksworth shot Duke because of this
ongoing crime.").

alleged criminal conduct of Thomas.  Unlike the claimants in *McCoy*, who conceded knowledge

of the car being stolen and their attempt to evade police, the principal elements of the charges in

this case remain completely contested.  Moreover, the subjective nature of the charge, the dearth

of disinterested eyewitnesses, and the relationship between the charges and the current lawsuit

make reliance on this slight evidence to establish criminal activity, and hence sovereign

immunity, improper.[10]

 The Court finds that there are genuine issues of material fact as to whether Officer Prevou

recklessly disregarded the rights of Thomas in making the arrest, and whether Thomas was

engaged in criminal activity when the arrest was made.  It remains "improper for the district court

to 'resolve factual disputes by weighing conflicting evidence...since it is the province of the jury

to assess the probative value of evidence.'" *Barton v. Fred Netterville Lumber Co.*, 317 F. Supp.

2d 700, 703 (S.D. Miss. 2004) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th

Cir. 1980)).  The question of Hancock County's immunity from suit on these facts is not "so one-

sided that one party should prevail as a matter of law." *Pepper v. Int. Gaming Sys., LLC*, 312 F.

Supp. 2d 853, 857 (N.D. Miss. 2004).  Therefore, summary judgment on the state law liability of

Hancock County is improper.

## IV. CONCLUSION

 Hancock County cannot be liable under § 1983 simply because it employed a tortfeasor,

---

[10]This district has previously found sovereign immunity waived, and the exception under 11-46-1 inapplicable, when an officer uses excessive force to make an improper arrest. *See Spencer v. City of Jackson, Miss.*, 511 F. Supp. 2d 671, 675 (S.D. Miss. 2007) (finding plaintiff stated a claim for reckless disregard for plaintiff's safety and well-being when police used excessive force in making an improper arrest).

and the municipality had neither a formal nor informal custom that led to the Plaintiff's injuries. Although there could have been better training for corrections officers, there is no record sufficient to establish a pattern of excessive force or improper arrests by Defendant Prevou creating a risk toward which municipal actors could have been deliberately indifferent. Therefore, the § 1983 claims against Hancock County and Sheriff Garber in his official capacity cannot survive summary judgment.  Moreover, because Sheriff Garber had no role in the Plaintiff's confinement outside of his role as a policymaker for Hancock County, he is entitled to qualified immunity from suit in his individual capacity as well.  But under state law, the Plaintiff has raised genuine issues of material fact as to whether Officer Prevou recklessly disregarded her well-being, and whether she was involved in criminal activity at the time of the incident.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion to dismiss [# 121] by Steve Garber is **granted** and the motion for summary judgment [# 122] is **denied as moot**. The motion to dismiss filed by Hancock County [# 124] is **denied** and the motion for summary judgment [# 125] filed by Hancock County is **granted in part and denied in part**.  The Plaintiff's § 1983 claims against Hancock County are dismissed, but the MTCA and state law claims against Hancock County remain viable.  All claims against Sheriff Garber in his individual capacity are dismissed.

IT IS FURTHER ORDERED AND ADJUDGED that the motion to file supplemental briefing [# 135] is **denied** and the motions to strike [# 137] and [# 141] are **denied as moot**.

21

SO ORDERED AND ADJUDGED on this, the 8th day of January, 2008.

*s/Keith Starrett*

United States District Judge